**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, | No. CV-20-01894-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Scottsdale Healthcare Hospitals, | |
| Defendant. | |

Pending before the Court is the parties' Joint Summary of Discovery Dispute (Doc. 190). The Court ordered the parties to submit supplemental briefing (Docs. 193, 195) and held a status conference on the same.

**I.   BACKGROUND**

The EEOC brought this action against HonorHealth under the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 based on its alleged failure to provide reasonable accommodations to its Arizona employees. The parties refer to the current and former HonorHealth employees whose claims underlie the EEOC's lawsuit as the "Aggrieved Individuals" ("AI"). The parties refer to the entire group of possible class members who received solicitation letters from the EEOC as "Potential AI."

During discovery, HonorHealth produced a list of its current and former employees who have requested an accommodation of their job duties based on a disability or medical condition. From that list, EEOC attorneys and staff decided which of those persons to send a solicitation letter about their workplace accommodation lawsuit. Ultimately, EEOC sent

solicitation letters to approximately 4,000 current and former HonorHealth employees.

The parties' present dispute centers on Defendant Scottsdale Healthcare Hospitals' ("HonorHealth") Request for Production No. 1, as modified during the parties' meet and confer and related communications. HonorHealth is now seeking:

> 1. All solicitation letters and emails sent to [Aggrieved Individuals "AI"] and potential AI in this case;
> 2. All responses to those solicitations; and
> 3. The participation agreements between the EEOC and the AI who have been disclosed.
>
> We ask that these documents be produced for any AI when any of the following conditions are met:
>
> 1. the EEOC did not identify the individual providing the response as an AI in this case;
> 2. the individual was identified as an AI, but was then dropped from this case;
> 3. the solicitation letter or email sent to that AI or potential AI did not invite the individual to call to obtain legal advice; or
> 4. the AI testifies or otherwise indicates that he or she did not have an attorney client relationship with the EEOC at the time the communications occurred.

(Doc. 190-1 at 36.) The EEOC has objected to Defendant's request based on attorney-client privilege and the attorney work product doctrine.[1] (*Id.* at 30-31.) The Court will analyze whether the requested items fall under attorney-client privilege and/or attorney work product protection.

## II.  LEGAL STANDARD

### A.  Attorney-Client Privilege

Arizona law governs the application of attorney-client privilege. "Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged." *Fisher v. United States*, 425 U.S. 391, 403 (1976) (citation omitted). The

---

[1] Additionally, the EEOC notes that the parties' stipulated ESI Order, adopted by this Court, states that "[c]ommunications related to this litigation between the EEOC attorneys (or their staff) and an aggrieved individual need not be produced nor listed on a privilege log." (Doc. 193 at 2 (quoting Doc. 111-1 at ¶ 8(c)).)

- 2 -

purpose of attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege only protects communications "made to or by [a] lawyer for the purpose of securing or giving legal advice[.]" *Samaritan Found. v. Goodfarb*, 862 P.2d 870, 874 (Ariz. 1993). "[A]n attorney client relationship commences when [AIs in an EEOC class action] take action to manifest their intent to enter the relationship. Courts have found such a relationship to exist when an individual contacted the EEOC through questionnaires and phone calls, consulted the EEOC with an intent to seek legal advice, or signed an affidavit stating a belief that an attorney-client relationship existed." *E.E.O.C. v. Collegeville/Imagineering Ent.*, No. CV-05-3033-PHX-DGC, 2007 WL 158735, at *1 (D. Ariz. Jan. 17, 2007) (citations omitted).

### B.     Attorney Work Product Protection

Federal law governs the application of the work product doctrine. *See Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 382 (D. Ariz. 2010) ("Unlike the attorney-client privilege, federal law governs the application of the work product doctrine in this case."). To qualify as privileged work product, the material must be (1) a document or tangible thing, (2) prepared by or for counsel or its representative, (3) in anticipation of litigation or for trial. *See* Fed. R. Civ. P. 26(b)(3)(A); *United States v. Nobles*, 422 U.S. 225, 237–38 (1975); *Hickman v. Taylor*, 329 U.S. 495, 508 (1947); *United States v. Richey*, 632 F.3d 559, 567–68 (9th Cir. 2011). This protection applies to documents prepared "by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." *Id.* Rule 26(b)(3) states that otherwise protected materials may be discoverable if a party "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3). The work product doctrine's protections are also waivable. *See Richey*, 632 F.3d at 567. The party asserting the privilege bears the burden of showing with precise facts that each subpoenaed document is work product created in

anticipation of litigation. *See U.S. v. 22.80 Acres of Land*, 107 F.R.D. 20, 22–26 (N.D. Cal. 1985); *Rogers v. Giurbino*, 288 F.R.D. 469, 480 (S.D. Cal. 2012).

## III.   DISCUSSION

The parties dispute whether each category of communications is protected by the attorney-client privilege and/or the attorney work product protection. To the extent the attorney work product protection applies, the parties dispute whether Defendants have established a substantial need for the requested documents to overcome the privilege.

### A.   Active AIs

EEOC asserts that, with respect to AIs who are named as class members and actively involved in the case ("Active AIs"), the requested solicitation letters, communications, and participation agreements are protected by attorney-client privilege. (Doc. 193 at 2.) EEOC also points out that the parties stipulated that "[c]ommunications related to this litigation between the EEOC attorneys (or their staff) and an aggrieved individual need not be produced nor listed on a privilege log." (*Id.* (quoting Doc. 111-1 at ¶ 8(c)).) HonorHealth disagrees, arguing that the privilege does not apply because the AIs believe that they did not have an attorney-client relationship with the EEOC. (Doc. 195 at 5.)

To the extent HonorHealth requests communications between EEOC attorneys and Active AIs, the Court finds that all of the requested documents constitute attorney-client communications. HonorHealth argues that some of the Active AIs that have been deposed thus far testified that there was no attorney-client relationship between the EEOC and themselves. (Doc. 195 at 5.) But the EEOC has provided affidavits from each of those Active AIs establishing that there is an attorney-client relationship. The Court has reviewed the deposition excerpts and is not persuaded that the deposed individuals understood HonorHealth's questions about the complex nature of an EEOC class action and how they fit into the case class members. Moreover, the application of attorney-client privilege is a legal conclusion and the signed affidavits rebut HonorHealth's arguments. Where an active AI responded to the EEOC's solicitation letter and signed the participation agreement, or otherwise has interests represented by the EEOC's case, all requested communications

between the EEOC and the AIs are subject to attorney-client privilege. *See Collegeville/Imagineering Ent.*, 2007 WL 158735, at *1 ("Courts have found [an attorney-client] relationship to exist when an individual. . . signed an affidavit stating a belief that an attorney-client relationship existed."). Thus, the requested documents need not be produced for these individuals.

Similarly, attorney-client privilege attaches for any AIs that affirmatively responded to the EEOC's solicitation letter to discuss their potential claims, including those who signed up to be a class member through a participation agreement but have since dropped out of the case. "An attorney-client relationship commences when the [AIs] take action to manifest their intent to enter the relationship." *See Collegeville/Imagineering Ent.*, 2007 WL 158735, at *1. Once an AI established an attorney-client relationship with the EEOC, their later removal from the case does not remove the privilege over prior communications made during that relationship. *See United States v. Margolis (In re Fischel)*, 557 F.2d 209, 211 (9th Cir. 1977) (privileged communications are permanently protected). To create an attorney-client privilege, the EEOC's solicitation letter must contain an "explicit offer of EEOC legal representation," *U.S. E.E.O.C. v. Pioneer Hotel, Inc.*, No. 2:11-cv-01588-LRH-GWF, 2014 WL 4987418, at *8 (D. Nev. Oct. 6, 2014), or other language that shows "its purpose was to solicit only from persons who wanted to be represented by the EEOC in the underlying action," *U.S. E.E.O.C. v. ABM Indus. Inc.,* 261 F.R.D. 503, 508 (E.D. Cal. 2009).

The form solicitation letters in the record indicate that the EEOC requested responses from only those employees whose experience fits within the lawsuit. (Doc. 190-1 at 12-13.) Specifically, the letters request a response to determine if the recipient was "denied a reasonable accommodation or fired or forced to quit" because of an accommodation request or medical condition. (*Id.*) The letters also state that the recipient will speak to an EEOC attorney and their experiences may entitle them to monetary relief. (*Id.*) This is factually distinct from the letter in *U.S. E.E.O.C. v. Republic Services*, where the letter sought any information about the employer's practices, including from third-party

witnesses. No. 2:04-cv-2007 WL 465446, at *2 (D. Nev. Feb. 8, 2007) ("[T]hough the idea of representation may be implicit in the letter, it is not its stated purpose."). So, by responding to the EEOC's solicitation letters for a consultation about their claims, the AIs evidenced their intent to seek legal advice from the EEOC's attorneys, regardless of whether they became actively involved in the case. "[T]he fact that a consultation is relatively brief does not negate the establishment of the relationship." *Research Corp. Tech. Inc. v. Hewlett Packard Co.*, 936 F. Supp. 697, 700 (D. Ariz. 1996). And, by signing the Participation Agreement and returning it to the EEOC, those AIs evidenced "an expectation of privacy in a communication with an attorney representing their interests and evaluating their potential claims." *See E.E.O.C. v. Swissport Fueling, Inc.*, CV-10-2101-PHX-GMS, 2012 WL 1648416, at *14 (D. Ariz. May 10, 2012).

### B.   Potential AIs

HonorHealth also seeks the identities of, and all communications with, persons who received a solicitation letter but did not respond or responded by declining EEOC's invitation without a consultation. EEOC argues that the identities of these individuals are covered by the attorney work product protection and any communications with those persons are covered by attorney-client privilege. (Doc. 193 at 7.) HonorHealth disagrees, arguing that the privilege does not apply for various reasons, including that EEOC did not have an attorney-client privilege with these individuals because they never intended to seek advice from the EEOC's attorneys. (Doc. 195 at 4.)

The Court finds that attorney-client privilege does not cover the EEOC's solicitation letters that were not responded to, or those that were responded to, but the response declined the invitation to speak to an EEOC attorney. Because a person must take an affirmative action to evidence their intent to enter into the attorney-client relationship, there can be no privilege where that person did not act at all, or their actions manifest an intent not to enter into that relationship. *See Collegeville/Imagineering Ent., et al.*, 2007 WL 158735, at *1 (D. Ariz. Jan. 17, 2007) ("An attorney-client relationship does not exist across an entire class merely when the EEOC has filed a case and identified a class."). The

EEOC must disclose the contents of the communications with all solicited individuals that did not respond or responded "no" to their request, including the solicitation letters and any responses, to the extent that they have not already been produced.[2] *See Swissport Fueling, Inc.*, 2012 WL 1648416, at *14 ("[T]he EEOC must disclose the contents of the questionnaires that were returned without a Participation Agreement or that were returned with Participation Agreements if the respondent indicated that he/she did not wish to assert a claim.").

The Court further finds that the attorney work product protection applies to the extent Defendant requests the EEOC to identify the recipients of the letters. In response to EEOC's discovery requests, HonorHealth produced a list of all current and former HonorHealth employees who requested an accommodation because of a disability or medical condition. (Doc. 193 at 6.) EEOC avers that it decided which persons to contact using data from HonorHealth's document production after "countless hours [] spent reconciling [HonorHealth] spreadsheets, removing duplicates, identifying incomplete information, researching, and updating contact information." (Doc. 193 at 6-7.) The recipient list of the solicitation letters, then, is the result of EEOC attorney's mental process and impressions and may contain sensitive information about its case strategy. *See Swissport Fueling, Inc.*, 2012 WL 1648416, at *13 ("Plaintiff is entitled to work-product immunity to the extent that Defendant requests that it identify to whom its attorneys sent the information."); *see also Collegeville/Imagineering Ent.*, 2007 WL 1089712, at *1 (D. Ariz. Apr. 10, 2007) ("[W]here a party . . . seeks to learn who has been contacted by opposing counsel, work product concerns arise. Such discovery requests seek to track the steps of opposing counsel . . . [and thus focuses] on the actions of lawyers rather than the knowledge of witnesses.").

HonorHealth argues that the identities of the solicited persons are relevant to its defenses, and it has a substantial need because EEOC's allegations stem from

---

[2] The Court notes that there are at least two form solicitation letters already in the record. (Doc. 190-1 at 2-13.) To the extent there are other versions of the solicitation letters, the contents of those letters are not privileged and EEOC must produce them.

HonorHealth's lack of infrastructure to process accommodations. (Doc. 195 at 5.) According to HonorHealth, if it can establish that a statistically significant percentage of the persons solicited did not have viable claims because their requested accommodations were handed appropriately, it can defeat EEOC's claims. (*Id.*) Notably, EEOC decided who to contact based on data it received from HonorHealth. (Doc. 193 at 6-7.) Thus, HonorHealth is in possession of the same information that EEOC used to identify its prospective class and it is not entitled to discovery of EEOC's case strategy without establishing a substantial need. *Blue Cross of California v. Insys Therapeutics Inc.*, CV-17-02286-PHX-DLR, 2019 WL 13032419, at *5 (D. Ariz. Mar. 13, 2019) (documents "prepared under the direction of counsel and/or in preparation of litigation are privileged"). HonorHealth has failed to "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3).[3]

Thus, the Court will require EEOC to produce the substance of the communications with those potential AIs that did not enter into an attorney-client relationship with EEOC, as discussed herein, but the EEOC shall redact all personal identifiable information of those persons as attorney work product.

///
///
///

---

[3] Additionally, HonorHealth's purported need for the requested information based on any anticipated post-judgment attorney's fees motion is premature. HonorHealth only relies on authority to support an attorney's fees award for prevailing parties. *See Hubbard v. SoBreck*, LLC, 554 F.3d 742, 743 (9th Cir. 2009). HonorHealth is not yet a prevailing party, so the Court will not allow discovery on this basis.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the parties' Statement of Joint Summary of Discovery Dispute (Doc. 190) is granted as follows:

1. EEOC shall produce all communications between the EEOC and solicited individuals who did not respond to the EEOC's solicitation, or responded to the solicitation but declined to participate, as set forth herein. For the avoidance of doubt, the identities of the solicited individuals are protected as EEOC's attorney work product and all personal identifiable information shall be redacted prior to production of the communications.

2. The motion is denied in all other respects.

Dated this 14th day of August, 2023.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge